

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. **15-20408**

18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 982

**CR-MARTINEZ**

**GOODMAN**

**UNITED STATES OF AMERICA**

**vs.**

**JAMES BANNER,**

        **Defendant.**
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment,

1. The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who are age sixty-five or older, or disabled.

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320-7b(f).

3. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

4. The Medicare program covered reimbursement for qualitative drug screenings ("Drug Screenings") that were provided in connection with a laboratory testing facility ("Lab").

5. Drug Screenings were billed to Medicare's Part B Trust Fund ("Medicare Part B"). Medicare Part B is administered in Florida by a contractor, which, pursuant to contract with HHS, receives, adjudicates and pays Medicare Part B claims submitted to it by Labs for Drug Screenings.

6. For a Lab to properly bill and be paid by Medicare for Drug Screenings, the patient must, among other things, qualify for the Drug Screening under Medicare's established rules and regulations. The Drug Screening also must be rendered according to Medicare's rules and regulations, and certain documents must be completed before a claim is submitted for reimbursement to Medicare.

7. For a Lab to properly bill and be paid by Medicare for Drug Screenings, the Drug Screening must be both reasonable and medically necessary. For example, a Drug Screening is medically necessary if the patient presents to a physician with a suspected drug overdose. Regular, routine, or recreational drug screenings, however, are not reasonable or medically necessary. Further, the patient's medical record must include documentation that fully supports the reasonableness of and medical necessity for the Drug Screening.

8. An Assisted Living Facility ("ALF") meant any facility licensed by the Florida Agency for Health Care Administration, whether operated for profit or not, which provided housing, meals, and one or more personal services for a period exceeding 24 hours to one or more adults who were not relatives of the owner or administrator.

2

## RELEVANT ENTITIES AND INDIVIDUALS

9.      Oracle Diagnostic Laboratories, Inc. ("Oracle") was a Florida corporation established in at least 2000 and headquartered in Davie, Florida. From 2003 to August 2011, Oracle billed Medicare for laboratory services, including, but not limited to, Drug Screenings.

10.     American Therapeutic Corporation ("ATC") was a Florida corporation originally established in 2002 and was headquartered in Miami, Florida. ATC operated several purported partial hospitalization programs connected to the treatment of mental illness throughout South Florida.

11.     Medlink Professional Management Group, Inc. ("Medlink") was a Florida corporation originally established in 2003 and was headquartered in Miami, Florida. Medlink was used as a vehicle to generate cash for ATC.

12.     Company A was a Florida corporation originally established in 2003 and was headquartered in Miami, Florida. Company A operated at least one ALF in South Florida.

13.     Company B was a Florida corporation originally established in 2005 and headquartered in Coral Gables, Florida.

14.     Network Resource Consultant, Inc. ("Network Resources") was a Florida corporation originally established in 2007 and was headquartered in Miami, Florida.

15.     Defendant **JAMES BANNER**, a resident of Miami-Dade County, Florida, owned Oracle between in or around 2003 and in or around 2011.

16.     Co-conspirator Michael Mendoza was the President of Network Resources.

17.     Co-conspirator A was the President of Company A and a Director of Company B.

18.     Co-conspirator Lawrence Duran was the manager and owner of ATC and Medlink.

19.     Co-conspirator Marianella Valera was the owner, CEO, president, secretary and treasurer of ATC.

## COUNT 1
## Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks
## (18 U.S.C. § 371)

1.      Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around at least 2005 and continuing through in or around at least October 2010, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendant,

### JAMES BANNER,

did knowingly and willfully that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with Michael Mendoza, Co-conspirator A, Lawrence Duran, Marianella Valera, and others known and unknown to the Grand Jury to commit certain offenses against the United States, that is:

a.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program;

b.      to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of

4

any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and

c.     to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving remuneration, including, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

## Purpose of the Conspiracy

3.     It was a purpose of the conspiracy for **JAMES BANNER** and his co-conspirators to unlawfully enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks and bribes in return for referring Medicare beneficiaries to Oracle for Drug Screenings; (2) submitting claims to Medicare through Oracle for claims based on bribes and kickbacks; and (3) concealing the payment of bribes and kickbacks.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.     **JAMES BANNER** offered and paid bribes and kickbacks to patient brokers and other co-conspirators in return for referring Medicare beneficiaries to Oracle for Drug Screenings, many of which were not medically necessary.

5.     **JAMES BANNER** and others caused Oracle to submit claims to Medicare for services purportedly provided by Oracle to the recruited Medicare beneficiaries.

6. **JAMES BANNER** and his co-conspirators created false and fraudulent documentation in order to disguise the true nature of the bribes and kickbacks paid to patient brokers and other co-conspirators.

7. In order to further conceal, from Medicare and other regulators, the payment of bribes and kickbacks, **JAMES BANNER** paid the illegal bribes and kickbacks directly to companies owned and controlled by the patient brokers and other co-conspirators, including Medlink, Network Resources, and Company B, in order to make it appear as if Medlink, Network Resources, and Company B performed legitimate services for Oracle.

8. Between in or around 2005 and in or around October 2010, **JAMES BANNER** and others caused the submission of over $20 million in claims to Medicare for services purportedly provided by Oracle.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

1. On or about February 19, 2009, **JAMES BANNER** signed a check, numbered 4258, in the approximate amount of $1,195, written from Oracle's corporate bank account to Company B, an entity owned and controlled by Co-conspirator A, a patient broker.

2. In or around early 2009, **JAMES BANNER** met with co-conspirators Lawrence Duran and Marianella Valera and discussed the payment of bribes and kickbacks to them in return for referring ATC's patients to Oracle for Drug Screenings.

3. On or about May 28, 2009, **JAMES BANNER** signed a check, numbered 4337, in the approximate amount of $8,945, written from Oracle's corporate bank account to Medlink,

6

an entity owned and controlled by Lawrence Duran, in return for referring Medicare beneficiaries to Oracle.

4. On or about January 14, 2010, **JAMES BANNER** signed a check, numbered 7828, in the approximate amount of $47,852, written from Oracle's corporate bank account to Network Resources, an entity owned and controlled by Michael Mendoza, a patient broker.

5. On or about July 30, 2010, **JAMES BANNER** signed a check, numbered 18650, in the approximate amount of $6,461, written from Oracle's corporate bank account to Network Resources, an entity owned and controlled by Michael Mendoza, a patient broker.

6. On or about September 23, 2010, **JAMES BANNER** signed a check, numbered 9540, in the approximate amount of $16,755, written from Oracle's corporate bank account to Company B, an entity owned and controlled by Co-conspirator A, a patient broker.

7. On or about September 24, 2010, **JAMES BANNER** signed a check, numbered 18975, in the approximate amount of $6,461, written from Oracle's corporate bank account to Network Resources, an entity owned and controlled by Michael Mendoza, a patient broker.

8. On or about September 30, 2010, Co-conspirator A signed a check, numbered 309, in the approximate amount of $16,755, written from Company B's corporate bank account to Medlink.

9. In or around October 2010, **JAMES BANNER** instructed Co-conspirator A to lie to law enforcement if asked about the bribe and kickback arrangement between Oracle and Co-conspirator A.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-4
## Payment of Kickbacks in Connection with a Federal Health Care Benefit Program
### (42 U.S.C. § 1320a-7b(b)(2)(A))

1.      Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth below, in Miami-Dade and Broward Counties, in Southern District of Florida and elsewhere, the defendant,

### JAMES BANNER,

did knowingly and willfully offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date of Payment | Approximate Amount | Description |
|---|---|---|---|
| 2 | July 30, 2010 | $6,461 | Check # 18650 from Oracle Diagnostic Laboratories, Inc. to Network Resources Consultants Inc. |
| 3 | September 23, 2010 | $16,755 | Check # 9540 from Oracle Diagnostic Laboratories, Inc. to Company B |
| 4 | September 24, 2010 | $6,461 | Check # 18975 from Oracle Diagnostic Laboratories, Inc. to Network Resources Consultants Inc. |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## FORFEITURE
## (18 U.S.C. § 982)

1.      The General Allegations and the Allegations set forth in Counts 1 through 4 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **JAMES BANNER**, has an interest.

2.      Upon conviction of any count of Counts 1 through 4, as alleged in this Indictment, the defendant, **JAMES BANNER**, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 982(a)(7).

3.      The property which is subject to forfeiture includes, but is not limited to, the sum of at least $2 million, which represents the gross proceeds the offenses alleged in the Indictment.

4.      If any of the property described above, as a result of any act or omission of the defendant:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

9

All pursuant to Title 18, United States Code, Section 982 and the procedures set forth in Title 21, United States Code, Section 853, made applicable by Title 18, United States Cose Section 982(b).

A TRUE BILL

_____
FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

NICHOLAS E. SURMACZ
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES OF AMERICA**

**vs.**

**JAMES BANNER,**

Defendant.

_____ /

**CASE NO.** _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

__X__ Miami _____ Key West
_____ FTL _____ WPB _____ FTP

New Defendant(s) _____ No _____
Number of New Defendants _____
Total number of counts _____

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:     (Yes or No)     __NO__
    List language and/or dialect     _____

4.  This case will take 7 days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                                    (Check only one)

    I     0 to 5 days                                   Petty     _____
    II    6 to 10 days           __X__                  Minor     _____
    II    11 to 20 days          _____                  Misdem.   _____
    IV    21 to 60 days          _____                  Felony    __X__
    V:    61 days and over       _____

6.  Has this case been previously filed in this District Court?     (Yes or No)     __No__
    If yes:
    Judge: _____                Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?     (Yes or No)     __No__
    If yes:
    Magistrate Case No. _____
    Related Miscellaneous numbers: _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the _____                District of _____

    Is this a potential death penalty case? (Yes or No)     __No__

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?          Yes     __X__ No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?          Yes     __X__ No

_____
NICHOLAS E. SURMACZ
TRIAL ATTORNEY, U.S. DEPARTMENT OF JUSTICE
FL Special Bar No. A5501939

*Penalty Sheet(s) attached                                                                REV 4/8/08

PENALTY SHEET

**Defendant's Name: JAMES BANNER**

**Case No:** _____

Count #: 1

Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) years' imprisonment

Counts #: 2-4

Payment of Kickbacks in Connection with a Federal Health Care Benefit Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\*Max. Penalty:** Five (5) years' imprisonment as to each count

Count #:

_____

_____

**\*Max. Penalty:** _____

Count #:

_____

_____

**\*Max. Penalty:** _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**